IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BIOLOGIX FRANCHISE MARKETING CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No.:  4:18-cv-00714 |
| KAY LOGIC, INC. and EDWARD KELLMAN, | ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff BioLogix Franchise Marketing Corp. ("FMC"), by and through its undersigned attorneys, hereby brings the following Verified Complaint for Damages and Injunctive Relief against Defendants Kay Logic, Inc. ("Kay Logic") and Edward Kellman ("Mr. Kellman") (collectively referred to herein as "Defendants"[1]), and in support thereof alleges as follows:

## THE PARTIES

1.      Plaintiff FMC is and at all relevant times was a Missouri corporation with its principal place of business at 1561 Fairview Avenue, St. Louis, Missouri 63132.  FMC is a franchisor of FMC franchises across the United States, including franchises in Michigan.

2.      Upon information and belief, Defendant Kay Logic is and at all relevant times was a Michigan company with its registered address in Michigan.  Defendant Kay Logic is a former franchisee of FMC.

3.      Upon information and belief, Defendant Edward Kellman is and at all relevant times was the President of Defendant Kay Logic.

---

[1] When used in the separate Counts below, the term "Defendants" means the Defendants named in those counts.

1

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

5.      Defendants are subject to Missouri's long arm statute, Section 506.500 because they have transacted business in Missouri and all of the Franchise Agreements between FMC and Defendants were entered into in Missouri.

6.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS

### A.      The Parties' Agreements.

7.      FMC is a biotechnology company engaged in the professional grease elimination service business, the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, and the composting supply and technology business, including but not limited to the manufacture, distribution, sales and installation of grease elimination equipment such as bacteria supply dispensers or pumps and other equipment, and the bacterial supply products used therein, and the providing of related grease line and trap cleaning, pumping and maintenance services known as the Grease Elimination System ("G.E.S."), and other related technologies in development from time to time, as well as other goods and services.

8.      On October 1, 2003, Defendant Kay Logic became a FMC franchisee for three FMC franchises when a previous FMC franchisee assigned its FMC franchises to Defendant Kay Logic.  A true and accurate copy of the Termination and Assignment of Franchise Agreements assigning three Franchise Agreements to Defendant Kay Logic is attached hereto as **Exhibit A**.

9.      Pursuant to the Termination and Assignment of Franchise Agreements, Defendant Edward Kellman guarantied all of Defendant Kay Logic's obligations under all three Franchise Agreements.  See Exh. A, Section VIII.G.

10.     The three Franchise Agreements assigned to Defendant Kay Logic, and guaranteed by Defendant Edward Kellman, were to operate the following franchises:

        a.      An FMC franchise in Macomb County, Michigan.  A true and correct copy of the FMC Franchise Agreement for the Macomb County franchise is attached hereto as **Exhibit B**.

        b.      An FMC franchise in Wayne County, Michigan.  A true and correct copy of the FMC Franchise Agreement for the Wayne County franchise is attached hereto as **Exhibit C**.

        c.      An FMC franchise in Oakland County, Michigan.  A true and correct copy of the FMC Franchise Agreement for the Oakland County franchise is attached hereto as **Exhibit D**.

11.     In the Franchise Agreements, Defendants acknowledged that FMC was a franchisor engaged in offering for sale franchises for businesses that will operate professional grease elimination services.  Exhs. B, C, and D at p. 1.

12.     Defendants further acknowledged that FMC was granting them a franchise to operate a business using the "BioLogix G.E.S. Program" in a designated territory.  Exhs. B, C, and D at p. 3, Section II.A.

13.     Each Franchise Agreement granted Defendants the right and license to use certain Marks, such as "BioLogix," "Bio-Logix," "G.E.S.," "G.E.S. Plus," "GTD-L," "GTD-SP,"

3

"GTD-LC," "Orgone Odor Eliminator," "Orgone," "Tomorrow's Bio-Technology…Today," and other future names designated by FMC.  Exhs. B, C, and D at p. 5, Section II.D.

14.  Defendants recognized and acknowledged that all right, title, and interest in and to the Marks were vested in FMC and FMC's Affiliates, and that upon expiration or termination of the Franchise Agreements for any reason, the rights to use the Marks were also terminated, and Defendants agreed to cease all use of the Marks after such expiration or termination.  Id.

15.   Defendants acknowledged that the trade secrets, information, ideas, research, technology, know-how, knowledge, expertise, manuals, procedures, systems, improvements and copyrighted materials, etc., including the Confidential Operations Manual, owned or developed by or licensed to FMC, whether or not published or suitable for registration or copyright, and the goodwill associated with them, are and shall remain the sole and exclusive property of FMC, and that the same shall constitute trade secrets and confidential information of FMC (hereinafter referred to as "Trade Secrets and Confidential Information.")  Exhs. B, C, and D at p. 19, Section X.A.

16.   Defendants agreed that upon termination of the Franchise Agreements for any reason, they would return immediately to FMC all Trade Secrets and Confidential Information, including but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operations Manual, business plans and strategies, sources of supply, memoranda or other paper writings provided to Defendants by FMC, its Affiliates or others as a part of the franchise relationship or otherwise.  Exhs. B, C, and D at p. 20, Section X.E.

17.   Defendants further acknowledged the uniqueness of the BioLogix G.E.S. Program including but not limited to the Marks and that FMC was making its knowledge, know-how, and

4

expertise available for Defendants for the sole purpose of operating their franchises.  Exhs. B, C, and D at p. 20, Section X.F.

18.     Defendants acknowledged that the Trade Secrets and Confidential Information made available to them in relation to the G.E.S. Program form the foundation upon which FMC's Affiliates operate and render other similar or compatible business activities which are not franchised to Defendants.  Id.  Defendant agreed that such other similar or compatible business activities include the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, bathroom hygiene and odor control technologies, and the composting supply and technology business (collectively "Related Activities").  Exhs. B, C, and D, pp. 20-21, Section X.F.

19.     Defendant acknowledged that the Trade Secrets and Confidential Information to be provided pursuant to the Franchise Agreements in relation to the G.E.S. Program also constitutes Trade Secrets and Confidential Information with respect to the Related Activities.  Id.

20.     Defendants agreed that it would be an unfair method of competition to use or duplicate any of the knowledge, know-how, technology, expertise and Trade Secrets and Confidential Information received from FMC or its Affiliates for any reason other than for the operation of the franchises.  Id.

21.     Defendants agreed that if the Franchise Agreements were terminated or expired for any reason, they would not:

> engage directly or indirectly, as an owner, employee, proprietor, stockholder, partner, director, officer, agent, or in any other capacity in any other business which uses a system of operation similar to or competitive with the method of operation associated with the G.E.S. Program or Related Activities.

Exhs. B, C, and D at p. 21, Section X.F.2.

5

22.     Defendants further agreed that upon termination or expiration of the Franchise Agreements for any reason, they:

> shall not directly or indirectly for [themselves] or through or on behalf of, or in conjunction with any person, persons, partnerships, corporations, or other entities, solicit, service, refer, become employed by, or attempt to divert, any customers of the Franchise for the purpose of providing grease elimination services or any Related Activities.

Id.

23.     The restrictions set forth in paragraphs 21 and 22 above are for a term of 3 years after termination or expiration of the Franchise Agreements for any reason, or the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing the covenants set forth in paragraphs 21 and 22, whichever is later.  Id.

24.     The geographic scope of the restrictions are the "Assigned Territory" for each franchise, as set forth below, and of "any other FMC franchisee or its Affiliates, and of any business engaged in a Related Activities and the metropolitan area where FMC or its Affiliates are servicing customer(s) at the time."  Id.

    a.     The "Assigned Territory" in the Macomb County, Michigan Franchise Agreement is Macomb County, Michigan.  Exh. B at Exhibit I.

    b.     The "Assigned Territory" in the Wayne County, Michigan Franchise Agreement is Wayne County, Michigan.  Exh. C at Exhibit I.

    c.     The "Assigned Territory" in the Oakland County, Michigan Franchise Agreement is Oakland County, Michigan.  Exh. D at Exhibit I.

**B.     Expiration of The Franchise Agreements**

25.     Beginning on October 1, 2003, Defendants operated their FMC franchises in their Assigned Territories.

26.     The Franchise Agreements were set to expire on their own terms on February 28, 2018.

27.     On January 19, 2018, Defendants informed FMC that it was not renewing the Franchise Agreements.

28.     Although the terms of the Franchise Agreements expired, by their terms, on February 28, 2018, FMC and Defendants agreed that Defendants could continue to operate the FMC franchises in the Assigned Territories pursuant to the Franchise Agreements while the parties discussed a business relationship beyond February 28, 2018.

29.     From January 19, 2018 to May 1, 2018, FMC and Defendants attempted to negotiate new franchise agreements, but were unsuccessful.

30.     On May 1, 2018, FMC sent a letter to Defendants informing them FMC hoped to continue the business relationship, but that FMC believed Defendants had no interest in remaining an FMC franchisee.  A true and correct copy of the May 1, 2018 letter is attached hereto as **Exhibit E**.

31.     In that letter, FMC requested that Defendants comply with all of the post-expiration requirements in the Franchise Agreements, namely:

        a.      Returning all Trade Secrets and Confidential Information to FMC;

        b.      Paying FMC all monies owing to FMC through the date of termination, with interest;

        c.      Immediately ceasing all operations as an FMC franchisee and ceasing to use the Marks and Sales Materials or anything which may be considered confusingly similar, and immediately removing all signs, equipment, marks, symbols, and products used in connection

with the operation of its franchise and ceasing all advertising and promotion in connection therewith;

        d.     Assigning to FMC all of Defendants' right, title and interest, if any, to its telephone numbers;

        e.     Returning to FMC all products, equipment, and Sales Materials purchased from FMC or its Affiliates; and

        f.     Immediately ceasing to provide services to all customers Defendants service and forfeit all rights they have to the customer contacts and assign to FMC any and all of Defendants' customer contracts.

Exh. E.

32.     FMC also requested that Defendants confirm they would comply with their post-expiration obligation to not compete with FMC pursuant to Section X.F.2 of the Franchise Agreements.  Exh. E.

**C.**     **<u>Defendants' Failure To Comply With Their Post-Expiration Obligations.</u>**

33.     Defendants have failed to respond to FMC regarding their compliance with any of their post-expiration obligations.

34.     Upon information and belief, Defendants are preparing to and have taken affirmative steps to operate a business that competes with FMC in the Assigned Territories in Michigan and in other territories.

35.     Upon information and belief, Defendants have changed their Assumed Name from "BioLogix of Southeast Michigan, Inc." to "Biokleen of Southeast Michigan."  A true and correct copy of Defendant's new Certificate of Assumed Name is attached hereto as **<u>Exhibit F</u>**.  "Biokleen" is a company that directly competes with FMC.  <u>See</u> www.biokleen.com.

## COUNT I
**(Temporary Restraining Order and Preliminary and Permanent Injunction –**
**Against All Defendants)**

36.　　FMC repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

37.　　By virtue of the foregoing, FMC has demonstrated a substantial likelihood that it will eventually prevail on the merits of its claims in this Complaint and that a balancing of the equities favors the issuance of a temporary restraining order and/or an injunction against Defendants.

38.　　Unless Defendants are enjoined from the foregoing conduct, FMC will be immediately and irreparably harmed by Defendants' continued use of FMC's Marks and use of its goodwill, and Defendants' continued use of FMC's confidential information which Defendants agreed to return promptly after the termination of the Franchise Agreement, and its operation of a competing business to FMC in violation of the restrictive covenant in the Franchise Agreements.

39.　　FMC has no adequate remedy at law.

40.　　FMC has been and continues to be irreparably harmed by Defendants' breaches of the Franchise Agreements and the restrictive covenant therein.

41.　　Prior to filing suit, FMC made numerous attempts to resolve the parties' dispute.

42.　　Unless the requested temporary, preliminary, and permanent injunctions are issued, FMC will continue to suffer irreparable harm due to Defendants' violations set forth herein.

43.　　If injunctive relief is not granted, the harm to FMC will outweigh any harm to Defendants.

44.     Public policy will be served by the entry of the requested injunctive relief as it will promote the public policy of enforcing contractual rights and obligations, and avoiding confusion in the marketplace.

45.     FMC submits that no bond is necessary to support the requested temporary and preliminary injunctions because Defendants will merely be required to honor the terms of the Franchise Agreement.

WHEREFORE, FMC respectfully prays that a temporary restraining order and preliminary and permanent injunction be entered enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1.      from violating the Franchise Agreements between FMC and Defendants, by either directly or indirectly engaging, as an owner, employee, proprietor, stockholder, partner, director, officer, agent or in any other capacity, in any other business which uses a system of operation similar to or competitive with the method of operation associated with FMC's G.E.S. Program or other similar or comparable business activities, including the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, bathroom hygiene and odor control technologies, and the composting supply and technology business ("Related Activities"), for a period of 3 years after May 1, 2018, or the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements, whichever is later, in the counties of Wayne, Macomb, and Oakland in Michigan and the territories of any other FMC franchisee or its affiliates and of any business engaged in any of the Related Activities and the metropolitan area where FMC or its Affiliates are servicing customers as of May 1, 2018 or the

date of the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements;

2.      to immediately return to FMC all of its Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

3.      to immediately cease operations as an FMC franchisee and cease using FMC's Marks and Sales Materials or anything which may be considered confusingly similar, and immediately remove all signs, equipment, marks, symbols, and products used in connection with the operation of Defendant's FMC franchise and shall cease all advertising and promotion in connection therewith;

4.      from using and disclosing, directly or indirectly, FMC's Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

5.      from representing to the public (directly or by implication) that they are associated with FMC or remain an authorized FMC franchisee;

6.      from withholding assignment of telephone numbers for the franchise offices operated under the Franchise Agreements;

7.      to return to FMC all products, equipment, and Sales Materials purchased from FMC or its Affiliates;

8.      to immediately cease providing services to all customers Defendants service and forfeit all rights Defendants have to the customer contacts and assign to FMC any and all of Defendants' customer contracts; and

9.      to immediately cease billing or collecting any monies from the customers Defendants service.

## <u>COUNT II</u>
### (Breach of Contract – Restrictive Covenant – Against All Defendants)

46.     FMC repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

47.     Defendants agreed that if the Franchise Agreements were terminated or expired for any reason, they would not:

> engage directly or indirectly, as an owner, employee, proprietor, stockholder, partner, director, officer, agent, or in any other capacity in any other business which uses a system of operation similar to or competitive with the method of operation associated with the G.E.S. Program or Related Activities.

Exhs. B, C, and D at p. 21, Section X.F.2.

48.     Defendants further agreed that upon termination or expiration of the Franchise Agreements for any reason, they:

> shall not directly or indirectly for [themselves] or through or on behalf of, or in conjunction with any person, persons, partnerships, corporations, or other entities, solicit, service, refer, become employed by, or attempt to divert, any customers of the Franchise for the purpose of providing grease elimination services or any Related Activities.

<u>Id.</u>

49.     Defendants have breached and continue to breach Section X.F.2 of the Franchise Agreements by failing to acknowledge that they are going to comply with their post-expiration obligations and, upon information and belief, by owning and operating Biokleen of Southeast

Michigan, which is a company that is in the same or substantially the same business as the business that was the subject of the Franchise Agreements.

50.     As a direct result of Defendants' conduct, FMC has lost and/or is imminently threatened with the loss of clients, business, and goodwill, and clients, business, and goodwill will continue to be wrongfully diverted to Defendants' new business if immediate, preliminary, and permanent injunctive relief is not granted.

51.     FMC has performed all of its obligations under the Franchise Agreement.

52.     Defendants' conduct has also caused, and will continue to cause, damages to FMC.

WHEREFORE, FMC respectfully prays that a temporary restraining order and preliminary and permanent injunction be entered enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1.          from violating the Franchise Agreements between FMC and Defendants, by either directly or indirectly engaging, as an owner, employee, proprietor, stockholder, partner, director, officer, agent or in any other capacity, in any other business which uses a system of operation similar to or competitive with the method of operation associated with FMC's G.E.S. Program or other similar or comparable business activities, including the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, bathroom hygiene and odor control technologies, and the composting supply and technology business ("Related Activities"), for a period of 3 years after May 1, 2018, or the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements, whichever is

later, in the counties of Wayne, Macomb, and Oakland in Michigan and the territories of any other FMC franchisee or its affiliates and of any business engaged in any of the Related Activities and the metropolitan area where FMC or its Affiliates are servicing customers as of May 1, 2018 or the date of the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements;

2.       to immediately return to FMC all of its Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

3.       to immediately cease operations as an FMC franchisee and cease using FMC's Marks and Sales Materials or anything which may be considered confusingly similar, and immediately remove all signs, equipment, marks, symbols, and products used in connection with the operation of Defendant's FMC franchise and shall cease all advertising and promotion in connection therewith;

4.       from using and disclosing, directly or indirectly, FMC's Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

5.       from representing to the public (directly or by implication) that they are associated with FMC or remain an authorized FMC franchisee;

6.      from withholding assignment of telephone numbers for the franchise offices operated under the Franchise Agreements;

7.      to return to FMC all products, equipment, and Sales Materials purchased from FMC or its Affiliates;

8.      to immediately cease providing services to all customers Defendants service and forfeit all rights Defendants have to the customer contacts and assign to FMC any and all of Defendants' customer contracts; and

9.      to immediately cease billing or collecting any monies from the customers Defendants service.

## COUNT III
### (Breach of Contract – Personal Guaranty - Against Edward Kellman)

53.      FMC repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

54.      Defendant Edward Kellman agreed to "guarantee to FMC the performance of all obligations of [Kay Logic] under the Franchise Agreements" and agreed to "timely perform and observe all the terms, covenants and conditions to be performed by [Kay Logic]" pursuant to the Franchise Agreements.  Exh. A at p. 5, Section VIII.G.

55.      Defendant Edward Kellman is liable and responsible for the breaches and claims set forth in this Complaint.

56.      Defendant Edward Kellman has not remedied any of the breaches set forth in this Complaint, and he has failed to abide by all of the covenants, representations, and agreements set forth in the Franchise Agreements.

57.      Defendant Edward Kellman breach of his obligations under the Termination and Assignment of Franchise Agreements has caused and continues to cause FMC damages.

WHEREFORE, FMC respectfully prays that a temporary restraining order and preliminary and permanent injunction be entered enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1.      from violating the Franchise Agreements between FMC and Defendants, by either directly or indirectly engaging, as an owner, employee, proprietor, stockholder, partner, director, officer, agent or in any other capacity, in any other business which uses a system of operation similar to or competitive with the method of operation associated with FMC's G.E.S. Program or other similar or comparable business activities, including the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, bathroom hygiene and odor control technologies, and the composting supply and technology business ("Related Activities"), for a period of 3 years after May 1, 2018, or the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements, whichever is later, in the counties of Wayne, Macomb, and Oakland in Michigan and the territories of any other FMC franchisee or its affiliates and of any business engaged in any of the Related Activities and the metropolitan area where FMC or its Affiliates are servicing customers as of May 1, 2018 or the date of the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements;

2.      to immediately return to FMC all of its Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications,

formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

3.      to immediately cease operations as an FMC franchisee and cease using FMC's Marks and Sales Materials or anything which may be considered confusingly similar, and immediately remove all signs, equipment, marks, symbols, and products used in connection with the operation of Defendant's FMC franchise and shall cease all advertising and promotion in connection therewith;

4.      from using and disclosing, directly or indirectly, FMC's Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

5.      from representing to the public (directly or by implication) that they are associated with FMC or remain an authorized FMC franchisee;

6.      from withholding assignment of telephone numbers for the franchise offices operated under the Franchise Agreements;

7.      to return to FMC all products, equipment, and Sales Materials purchased from FMC or its Affiliates;

8.      to immediately cease providing services to all customers Defendants service and forfeit all rights Defendants have to the customer contacts and assign to FMC any and all of Defendants' customer contracts; and

9.      to immediately cease billing or collecting any monies from the customers Defendants service.

WHEREFORE, FMC also respectfully prays for damages against Defendants in an amount to be determined at trial, plus pre-judgment and post-judgment interest on the amount awarded to FMC in this litigation, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT IV
**(Misappropriation of Trade Secrets – Against All Defendants)**

58.     FMC repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

59.     The confidential information of FMC to which Defendants were given access and have failed to return to FMC constitutes trade secrets within the meaning of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.453(4), and the Michigan Uniform Trade Secrets Act, MCL § 445.1902(d).  Such confidential information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.  FMC has made reasonable efforts to maintain the secrecy of such confidential customer information.

60.     Defendants' conduct in willfully misappropriating the trade secrets of FMC by improperly acquiring, using, and disclosing such trade secrets in breach of a duty to maintain the secrecy of such trade secrets and return those trade secrets after their association with FMC had been terminated, is outrageous because of Defendants' evil motive and/or reckless indifference to the rights of others.

61.     Defendants' misappropriation of the trade secrets of FMC entitles FMC to injunctive relief and punitive damages.

WHEREFORE, FMC respectfully prays that a temporary restraining order and preliminary and permanent injunction be entered enjoining Defendants, their officers, agents,

servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1.         from violating the Franchise Agreements between FMC and Defendants, by either directly or indirectly engaging, as an owner, employee, proprietor, stockholder, partner, director, officer, agent or in any other capacity, in any other business which uses a system of operation similar to or competitive with the method of operation associated with FMC's G.E.S. Program or other similar or comparable business activities, including the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, bathroom hygiene and odor control technologies, and the composting supply and technology business ("Related Activities"), for a period of 3 years after May 1, 2018, or the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements, whichever is later, in the counties of Wayne, Macomb, and Oakland in Michigan and the territories of any other FMC franchisee or its affiliates and of any business engaged in any of the Related Activities and the metropolitan area where FMC or its Affiliates are servicing customers as of May 1, 2018 or the date of the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements;

2.         to immediately return to FMC all of its Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

3.      to immediately cease operations as an FMC franchisee and cease using FMC's Marks and Sales Materials or anything which may be considered confusingly similar, and immediately remove all signs, equipment, marks, symbols, and products used in connection with the operation of Defendant's FMC franchise and shall cease all advertising and promotion in connection therewith;

4.      from using and disclosing, directly or indirectly, FMC's Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

5.      from representing to the public (directly or by implication) that they are associated with FMC or remain an authorized FMC franchisee;

6.      from withholding assignment of telephone numbers for the franchise offices operated under the Franchise Agreements;

7.      to return to FMC all products, equipment, and Sales Materials purchased from FMC or its Affiliates;

8.      to immediately cease providing services to all customers Defendants service and forfeit all rights Defendants have to the customer contacts and assign to FMC any and all of Defendants' customer contracts; and

9.      to immediately cease billing or collecting any monies from the customers Defendants service.

WHEREFORE, FMC also respectfully prays for damages, including punitive damages, against Defendants in an amount to be determined at trial, plus pre-judgment and post-judgment

interest on the amount awarded to FMC in this litigation, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT V
### (Tortious Interference with Business Expectancy –
### Against All Defendants)

62.     FMC repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

63.     FMC franchisees perform certain grease elimination services for various individuals and entities.

64.     Defendants are aware that FMC has certain business expectancies and relationships with certain customers.  In fact, the Franchise Agreements require that Defendants, upon expiration of the Franchise Agreements, assign Defendants' telephone numbers to FMC, cease providing services to all customers Defendants service, and forfeit all rights Defendants have to the customer contacts and assign to FMC any and all of Defendants' customer contracts. Exhs. B, C, and D, Section XII.

65.     Defendants intend to compete with FMC in violation of the Franchise Agreement, including servicing the customer contracts to which Defendants are required to forfeit all rights and assign to FMC.

66.     Defendants intend to cause a breach of those customer relationships to which FMC has a right to service.

67.     There is no justification for Defendants' blatant disregard and interference with FMC's business expectancies with its customers.

21

68.     Defendants' intentional interference with FMC's business expectancies with its customers has resulted in damages to FMC.

WHEREFORE, FMC respectfully prays that a temporary restraining order and preliminary and permanent injunction be entered enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1.     from violating the Franchise Agreements between FMC and Defendants, by either directly or indirectly engaging, as an owner, employee, proprietor, stockholder, partner, director, officer, agent or in any other capacity, in any other business which uses a system of operation similar to or competitive with the method of operation associated with FMC's G.E.S. Program or other similar or comparable business activities, including the industrial and municipal wastewater treatment business, the bioremediation supply and technology business, the natural insect control supply and technology business, bathroom hygiene and odor control technologies, and the composting supply and technology business ("Related Activities"), for a period of 3 years after May 1, 2018, or the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements, whichever is later, in the counties of Wayne, Macomb, and Oakland in Michigan and the territories of any other FMC franchisee or its affiliates and of any business engaged in any of the Related Activities and the metropolitan area where FMC or its Affiliates are servicing customers as of May 1, 2018 or the date of the entry of a final order of a court (or arbitrator) of competent jurisdiction enforcing paragraph X.F.2 of the Franchise Agreements;

2.      to immediately return to FMC all of its Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to

serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

3.     to immediately cease operations as an FMC franchisee and cease using FMC's Marks and Sales Materials or anything which may be considered confusingly similar, and immediately remove all signs, equipment, marks, symbols, and products used in connection with the operation of Defendant's FMC franchise and shall cease all advertising and promotion in connection therewith;

4.     from using and disclosing, directly or indirectly, FMC's Trade Secrets and Confidential Information as those terms are defined in the Franchise Agreements, including, but not limited to serialized materials, Sales Materials, brochures, documents, information, specifications, formulas, projections, Operation Manuals, business plans and strategies, sources of supply, memoranda, or other paper writings provided to Defendants by FMC;

5.     from representing to the public (directly or by implication) that they are associated with FMC or remain an authorized FMC franchisee;

6.     from withholding assignment of telephone numbers for the franchise offices operated under the Franchise Agreements;

7.     to return to FMC all products, equipment, and Sales Materials purchased from FMC or its Affiliates;

8.     to immediately cease providing services to all customers Defendants service and forfeit all rights Defendants have to the customer contacts and assign to FMC any and all of Defendants' customer contracts; and

9.  to immediately cease billing or collecting any monies from the customers Defendants service.

WHEREFORE, FMC also respectfully prays for damages against Defendants in an amount to be determined at trial, plus pre-judgment and post-judgment interest on the amount awarded to FMC in this litigation, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

Dated: May 7, 2018                    GREENSFELDER, HEMKER, & GALE, P.C.


                                      By: /s/ David Simmons
                                          Christopher Pickett, E.D. Mo. 51059 MO
                                          cap@greensfelder.com
                                          David Simmons, E.D. Mo. 53801 MO
                                          ds@greensfelder.com
                                          10 South Broadway, 20th Floor
                                          St. Louis, Missouri 63102
                                          Telephone:  (314) 241-9090
                                          Facsimile: (314) 345-5465

                                          *Attorneys for Plaintiff BioLogix Franchise Marketing Corp.*

1726713

**VERIFICATION**

STATE OF MISSOURI       )
                            ) ss.
COUNTY OF _Saint Louis_   )

I, _Dale Kaline_ , of lawful age, and after being first duly sworn on oath, state that I am the _President/CEO_ for Plaintiff BioLogix Franchise Marketing Corp. ("FMC"), that I am authorized to sign this Verification on behalf of FMC, that I have read the above and foregoing Verified Complaint for Damages and Injunctive Relief against Defendants Kay Logic, Inc. and Edward Kellman and know the contents thereof, and that such allegations are true according to the best of my knowledge and belief.

_____

Subscribed and sworn to before me this _7th_ day of May, 2018.

_____
Notary Public

My Commission Expires:

_January 24, 2021_

JAMES ANTOINE STAMPLEY
Notary Public – Notary Seal
St Louis County – State of Missouri
Commission Number 12290479
My Commission Expires Jan 24, 2021