UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BIOLOGIX FRANCHISE MARKETING CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:18CV00714 AGF |
| KAY LOGIC, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion to enforce settlement (ECF No. 24). For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff Biologix Franchise Marketing Corp. ("Biologix") is a manufacturer and franchisor of industrial cleaning products. Defendant Kay Logic is a former franchisee owned by Defendant Edward Kellman (together, "Kay"). The parties appeared before the Court for an evidentiary hearing on September 11, 2019, and presented testimony described further below.

In the underlying case, filed in May 2018, Biologix sued Kay for breach of contract alleging that, upon termination of the parties' franchise agreement, Kay violated the confidentiality and non-compete clauses by using Biologix's proprietary information to operate a competing business in prohibited territory. A month later, on June 14, 2018, the parties executed a confidential settlement agreement pursuant to which Kay agreed to pay

$324,000, payable in 27 monthly installments of $12,000. The agreement further provides that Kay may use a portion of each payment as a credit toward the purchase of Biologix's products and may sell the products without restriction and using Biologix's trademark. Relevant provisions of the settlement agreement are excerpted below.

> Section 1 captures the crux of the agreement as follows:
>
> FMC [Biologix] acknowledges and understands that the primary benefit to Kay Logic and Kellman under this Agreement is the $8,250 credit for supplies … and if such supplies cannot be provided, the $12,000 monthly payment shall cease and no further payments shall be due to FMC (subject to the below cure provision).

ECF No. 25-1, p. 1.

> Sections 2 and 3 describe the unlimited scope of Kay's sales rights and the

nature and consequences of a default by either party:

> There shall be no restrictions on the type and quantity of product that may be ordered by Kay Logic under the credit amount … There are no restrictions on how Kay Logic uses or what Kay Logic does with the products it purchases from FMC. If Kay Logic does not receive the products ordered by the 15th day of the month following its order, Kay Logic shall provide notice to FMC and FMC shall have 30 calendar days to cause the default to be cured and no further payment shall be due unless and until such default is cured with [sic] that 30-day period. If FMC does not cause the default to be cured… the $12,000 monthly payments shall cease and no further payments shall be due FMC and this Agreement shall immediately be terminated.
>
> … if Kay Logic fails to make any monthly payment, FMC will not be required to fill further orders until the failure to pay has been cured. In addition FMC shall have the option in its sole discretion the right [sic] to file the Consent Judgment and fill in the blanks, provided that it first gives notice and an opportunity to cure the payment default…

ECF No. 25-1, p. 1-2.

Section 4 limits Kay's right to use Biologix's trademark except with respect to Biologix products purchased pursuant to the agreement:

> During the term of this Agreement, the parties agree that Kay Logic will do its own billing and will use its own trademarks, trade names, service marks, logos, and commercial symbols and will not use any trademarks, trade names, service marks, logos, and commercial symbols of FMC. The parties acknowledge, understand, and agree they are prohibited from using any FMC trademark, trade name, service mark, logo, and commercial symbol, except for the sale and use of Biologix-branded products purchased under this Agreement.

ECF No. 25-1, p. 3.

Section 21, titled Further Assurances, states:

> The parties hereto agree to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

ECF No. 25-1, p. 8.

Finally, Section 24 provides for an award of attorney fees and other litigation costs in the event of a dispute:

> In addition to any other remedy, if any dispute arises under this Agreement and any Party is required to enforce the terms of this Agreement (including but not limited to filing the Consent Judgment … and seeking payment from Kay Logic), the prevailing party shall be entitled to an award of its or his attorneys' fees, costs, and expenses, including expert expenses, incurred in such enforcement.

ECF No. 25-1, p. 8.

Beyond the language in sections 2 and 3 describing "default" as Biologix's failure to supply products or Kay's failure to pay, the agreement does not contain a standard termination clause expressly contemplating termination for other breaches by either party.

The arrangement proceeded without incident for eight months, during which Kay paid the installment, received and resold Biologix's product, and invested significant resources in developing an online sales platform. According to testimony by Kay's owner, Kellman, and by Biologix's executive, Adam Kalina, the two communicated about Kay's progress on several occasions in late 2018 and early 2019. Specifically, Kellman told Kalina about Kay's expanding online presence and sale of Biologix products. Kalina conveyed the information to Biologix's president, Dale Kalina, and neither expressed any concern or objection regarding Kay's operations. On February 17, 2019, Kellman emailed Biologix's finance manager, Rhonda Barnes, to announce Kay's imminent plans to sell Biologix products on Amazon. In that email, Kellman (1) requested a copy of the Biologix trademark to submit to Amazon for that purpose and (2) indicated that he was having difficulty getting approval for Amazon fulfillment services (i.e., storage and delivery by Amazon) due to language contained in Biologix's product safety data sheets regarding hazardous materials. Kellman concluded the email by requesting Biologix's full cooperation in his endeavor to create an Amazon storefront.

Sometime shortly thereafter, Biologix received a phone call from a franchisee inquiring about Kay's online sales and favorable prices and requesting equal pricing. On March 1, 2019, Kalina, Barnes, and Kellman had a telephone conversation, which Kellman recorded, in which Barnes told Kellman that Kay could not use the Biologix trademark because only franchisees had that right and "it's a conflict of interest." More specifically, Biologix objected to Kay's sale of commercial-grade products (the disputed products) used in Biologix's franchise services. Kalina and Barnes offered to help Kay develop a private

label for distribution of Biologix products under a different name, without which Barnes indicated that products sent to Kay would be marked "not for resale."

Following that conversation, the parties exchanged several communications through counsel, which identified two principle disputes: (1) the scope of Kay's right to use the Biologix trademark and (2) Biologix's obligation to revise its safety data sheets for the disputed products so that Kay could obtain Amazon fulfillment services. Biologix refused to provide its trademark documents, claiming that Kay had only a "limited license" to use the trademark to resell Biologix products purchased under the agreement. Biologix refused to revise its safety data sheets for the disputed products because, it explained, those commercial-grade products are not suitable for retail sales on Amazon; rather, they are only to be used by franchisees for professional services. After further communications through counsel proved unsuccessful in resolving the parties' differences, Kay filed the present motion to enforce the settlement. The Court stayed Kay's payment obligations pending resolution. ECF No. 43.

**Parties' Arguments**

In support of this motion, Kay argues as follows. Biologix breached the settlement agreement by prohibiting Kay's use of Biologix's trademarks and by refusing to provide revised product safety data sheets on commercial-grade products for fulfillment by Amazon. The agreement grants Kay unrestricted use of the Biologix trademarks and contains no qualifiers as to certain products. The "Further Assurances" clause obligates Biologix to take any action reasonably necessary to advance the purpose of the agreement, in this case revising the safety data sheets. Biologix's unilateral obstructions violate the agreement.

Additionally, Biologix breached an implied covenant of good faith and fair dealing, evidenced by Biologix's abrupt change in position eight months into the agreement.

Although Kay's motion is styled as one to enforce settlement, Kay actually seeks (1) termination of the agreement and its payment obligations thereunder, (2) a refund of past payments for products it claims are now unsellable due to Biologix's restrictions, (3) a refund of its ninth monthly payment, (4) attorney fees and costs, and (5) damages of $90,065 representing Kay's investment in an Amazon storefront. Kay claims that Biologix defaulted on its obligation to provide products, triggering Kay's right to terminate, insofar as the products are useless without accompanying trademark and safety data sheets for Amazon sales.

Biologix responds as follows. Biologix has not refused Kay permission to *use* its trademarks; rather, Biologix only refused to provide a copy of its actual trademark registration certificate for Kay to submit to Amazon. Even if Biologix provided the certificate, Kay still would not satisfy Amazon's requirements because Kay does not own the trademarks. Biologix has not refused to provide safety data sheets; rather, it simply refused to modify existing data sheets for the disputed products just to accommodate Kay's objective to satisfy Amazon fulfillment requirements. Kay's claim that it is now unable to sell the products is belied by the fact that Kay has in fact continued to sell them. Kay's claim of breach of an implied covenant of good faith and fair dealing cannot be brought in the context of a motion to enforce settlement and therefore should be disregarded. Even were that claim cognizable, Kay's demands are unreasonable and beyond the scope of the agreement. If Kay's success has been limited by its inability to utilize Amazon brand

registry and fulfillment services, Kay alone is responsible for its lack of due diligence as to Amazon's requirements. Biologix seeks enforcement of the settlement agreement and Kay's payment obligations thereunder as well as attorney fees and costs.

In reply, Kay insists that Biologix did indeed attempt to restrict its operations by imposing limitations not contained in the agreement. Kay emphasizes the timing of events, noting that the parties performed the agreement without incident for eight months, until a franchisee complained. Only then did Biologix inform Kay that commercial-grade products were exclusively for franchisees.

## DISCUSSION

"District courts have inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous." *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). "In a diversity case, the settlement contract must be construed according to state law." *Id*. Here, the settlement agreement does not contain a choice of law provision, and the parties have not briefed the issue of governing law. Biologix is a Missouri company. Kay is a Michigan company whose former Biologix franchise territory was in Michigan. Obviously, the underlying lawsuit was filed in the Eastern District of Missouri. Both parties cite precedent applying Missouri law. As such, the Court infers that the parties do not dispute the applicability of Missouri contract law in this diversity case.

"The creation of a valid settlement agreement requires a meeting of the minds and a mutual assent to the essential terms of the agreement." *St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, Inc.*, 301 S.W.3d 549, 552 (Mo. App. E.D. 2009). A meeting of the minds or mutual assent is reached when the minds of the contracting parties

meet upon and assent to the same thing in the same sense at the same time. *Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. App. W.D. 2012). "A party cannot avoid an otherwise enforceable settlement agreement merely because he later changes his mind or determines that the settlement is now unsatisfactory." *Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod*, No. 4:11CV00073 AGF, 2012 WL 5948916, at *2 (E.D. Mo. Nov. 28, 2012). "Even where one party may now be unhappy with some or all of the terms, the fact that a party decides after the fact that a contract is not to its liking does not provide a reason … to release that party from its obligation." *Id*.

Based on the language of the settlement agreement and the testimony and other evidence in the record, the Court finds that Biologix breached the agreement by attempting to restrict Kay's use of the Biologix trademark and sale of Biologix commercial products. Nothing in the agreement or in the parties' interactions prior to the franchisee inquiry in late February 2019 supports Biologix's position, taken after that inquiry, limiting Kay's ability to sell commercial-grade products. The agreement contains no distinction between commercial and retail products or between the products themselves and the services in which they are used. Rather, the agreement expressly permits Kay to use the Biologix trademark for the sale and use of all Biologix products, without restriction. In this respect, Kay's allegation of breach is well-founded.[1]

---

[1] To the extent Biologix argues that Kay defaulted by failing to submit timely payment after the present motion was filed but before the Court stayed Kay's obligation, the Court finds that Kay's action was reasonable and not a breach of the agreement. Counsel were in communication at the time but could not reach a mutually satisfactory temporary solution.

However, the Court finds that the parties did not reach a meeting of the minds regarding the extent of Biologix's specific obligations under the Further Assurances clause such that Biologix would be required to modify its safety data sheets to support Kay's Amazon fulfillment plans. The record lacks any evidence that either party anticipated such a need. It simply was not contemplated at the time of settlement. Kay had not even informed Biologix of its plans at that point. Kay's expectation in this regard is beyond the parties' mutual understanding of "assurances" reasonably necessary to further the purpose of the agreement. Biologix did not breach the agreement by refusing to accommodate Kay's request for revisions to the commercial product safety data sheets to meet Amazon's fulfillment requirements.[2]

**Remedy**

Typically, a motion to enforce settlement is a collateral action by a party seeking specific performance of the agreement. *See, e.g., Am. Recreation Products, LLC v. Tennier Indus., Inc.*, 11 F. Supp. 3d 959, 966 (E.D. Mo. 2014) (stating that a motion to enforce is a collateral action imposing the burden of proof on the party seeking specific performance); *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. 2007) ("A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement."). Here, however, Kay does not seek enforcement and performance in the form of Biologix's provision of rights or documents wrongfully withheld, so that the parties may

---

[2] To clarify, however, Biologix must continue to provide and/or modify its safety data sheets to the extent necessary for Kay to sell its products online in a manner consistent with the parties' practices during the first eight months of the term of the agreement.

carry on with their arrangement. Rather, Kay seeks termination of the agreement by characterizing Biologix's withholding as a total failure to provide products — a default. In other words, Kay seeks enforcement of the default provision. Biologix rejects Kay's characterization, noting that Biologix has filled and remains willing to fill Kay's orders for products. Biologix suggests that Kay is merely attempting to avoid its financial obligation under the settlement agreement, which currently stands at $216,000.

Upon careful review of the agreement, the Court concludes that, while enforcement in some form is warranted, the present facts do not constitute a Biologix default resulting in termination of Kay's payments. The agreement states in pertinent part:

> …**if such supplies cannot be provided**, the $12,000 monthly payment shall cease and no further payments shall be due to FMC (subject to the below cure provision).
>
> …**If Kay Logic does not receive the products ordered** by the 15th day of the month following its order, Kay Logic shall provide notice to FMC and FMC shall have 30 calendar days to cause the default to be cured and no further payment shall be due unless and until such default is cured with [sic] that 30-day period. If FMC does not cause the default to be cured… the $12,000 monthly payments shall cease and no further payments shall be due FMC and this Agreement shall immediately be terminated.

ECF No. 25-1, p. 1-2.

As plainly contemplated above, "default" means Biologix's failure to provide products. That is not what happened here. Kay's "constructive default" theory is essentially one of frustration of purpose regarding its Amazon business plan, but that doctrine does not apply to these facts. *See, e.g., Werner v. Ashcraft Bloomquist, Inc.,* 10 S.W.3d 575, 577 (Mo. App. E.D. 2000) (explaining that the doctrine of commercial frustration excuses a party from performance where an unforeseen event beyond the parties' control destroys the

value of performance or purpose of the contract). Kay's impediments on Amazon, whether a result of Biologix's non-cooperation or Kay's lack of due diligence, do not destroy the entire value or purpose of the agreement. Biologix never failed to supply products, and the products were never completely unsellable simply because Kay lacked an Amazon storefront. Despite the phone call in which Ms. Barnes attempted to forbid Kay's sales of commercial products due to franchisee concerns, subsequent correspondence by Biologix's counsel acknowledged that Kay had at least a limited license to sell Biologix products, albeit without the documents Kay requested for its Amazon storefront. Kay had and still has other websites and means through which to sell the products and may do so in the future. Thus, while Biologix's attempt to restrict Kay's rights did contravene the agreement, the Court is not convinced that Biologix's conduct constitutes an actual default thereby excusing the entirety of Kay's remaining debt under the settlement.

Again, a motion to enforce settlement is "a collateral action for specific performance of the settlement agreement." *St. Louis Union Station Holdings*, 301 S.W.3d at 551. "Specific performance is a matter of grace resting upon basic equities and residing within the sound discretion of the [court] depending… upon the facts of each particular case." *Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Const., LLC*, 807 F. Supp. 2d 820, 826 (E.D. Mo. 2011). Given the plain language of the agreement and the particular facts of this case, the Court will deny Kay's motion to enforce settlement to the extent Kay seeks enforcement of the default clause and the remedy of termination. But the Court will enforce the agreement to the extent Kay is entitled to use the Biologix trademark to sell Biologix products without restriction.

Finally, the Court is not persuaded that Kay's claim for damages on a theory of breach of an implied duty of good faith and fair dealing is cognizable here. Kay might have filed a separate cause of action for breach of contract and damages but instead filed this motion to enforce the settlement in the underlying case.[3] Thus, to the extent Kay seeks damages of $90,065 in sunk costs for its Amazon storefront, that relief will be denied.

**Attorney Fees**

Both parties seek an award of attorney fees payable to the prevailing party, pursuant to the settlement agreement. The relevant provision states:

> In addition to any other remedy, if any dispute arises under this Agreement and any Party is required to enforce the terms of this Agreement …, the prevailing party shall be entitled to an award of its or his attorneys' fees, costs, and expenses, including expert expenses, incurred in such enforcement.

ECF No. 25-1, p. 8.

This dispute arose, and Kay was required to enforce the terms of the agreement, as a direct result of Biologix's improper restrictions on Kay's right to use the Biologix trademark to sell Biologix products. Applying the language of the agreement to the circumstances giving rise to the present motion, the Court concludes that Kay is the prevailing party notwithstanding the Court's alternative remedy.

---

[3] Kay has expressly reserved the right to file a separate cause of action for breach of contract. ECF No. 25, p. 13 n. 3, citing to paragraph 16 of the settlement agreement stating: "No failure to exercise and no delay in exercising any right, remedy, or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity." ECF No. 25-1, p. 6-7. The Court expresses no opinion on Kay's options in this regard.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to enforce settlement (ECF No. 24) is **GRANTED in part** and **DENIED in part** as follows:

1. Absent the parties' mutual agreement to proceed otherwise, the parties shall specifically perform the agreement. Defendants are entitled to use the Biologix trademark for sales of the disputed products without restriction.

2. Defendants' claim for damages is **DENIED without prejudice**.

3. Defendants' request for attorney fees as the prevailing party is **GRANTED**. Defendants shall submit within ten (10) days hereof a motion for attorney fees and other costs, with supporting documentation, under seal if appropriate, for the Court's consideration.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of January, 2020.